NELSON, HALEY, PATTERSON & QUIRK, INC., Plaintiff–Appellant,

v.

GARNEY COMPANIES, INC., Defendant–Appellee.

No. 87CA1610.

Colorado Court of Appeals, Div. V.

Aug. 3, 1989.

Rehearing Denied Sept. 14, 1989.

Knapp, Lee and York, P.C., Byrum C. Lee, Jr., Denver, for plaintiff-appellant.

Howe and Porter, P.C., Edwin A. Howe, II and Jon M. Leader, Denver, for defendant-appellee.

Opinion by Judge HUME.

Nelson, Haley, Patterson & Quirk, Inc., (NHPQ) appeals the summary judgment dismissing its claim for indemnification against Garney Companies, Inc., and the award of attorney fees to Garney. We affirm the judgment dismissing NHPQ's claim, but reverse the award of attorney fees.

Garney was the general contractor on a sewer line project for which NHPQ provided engineering services. The contract for the project required Garney to indemnify NHPQ for all damages imposed upon it arising out of Garney's defective work. In the spring of 1980, the Big Thompson River flooded and damaged adjacent real and personal property in the vicinity of the project.

In November 1980, several claimants sued NHPQ and Garney, alleging that defective design, construction, and installation of the sewer project caused damages they sustained during the flood. NHPQ asserted no cross-claim against Garney in that action. In 1982, Garney settled the claims asserted against it and was dismissed from the action with NHPQ's acquiescence.

Subsequently, the claimants' action against NHPQ proceeded to trial and resulted in a jury verdict and judgment against NHPQ. After an appeal and the issuance of a mandate by this court on December 17, 1984, NHPQ issued its check in payment of the adjudicated claim on January 16, 1985, and the original action was later dismissed.

On January 21, 1987, NHPQ commenced this action for indemnification against Garney. The district court granted Garney's motion for summary judgment, concluding that the action was time-barred by operation of Colo. Sess. Laws 1979, ch. 144, § 13–80–127 at 631 (now codified, with additional amendments, as § 13–80–104, C.R.S. (1987 Repl.Vol. 6A)).

I.

Relying on *Duncan v. Schuster–Graham Homes, Inc.*, 194 Colo. 441, 578 P.2d 637 (1978), NHPQ contends that the district court erred in determining that its indemnity claim accrued not later than January 16, 1985, when NHPQ issued its check in payment of the injured parties' claims. It argues that the limitations period did not begin to run until the date when the court formally dismissed the original action or, alternatively, when the check was received and formally accepted by the claimants in satisfaction of their underlying claims. We agree that the trial court's determination of the accrual date was erroneous, but we nevertheless conclude that the claim was barred.

In *Duncan v. Schuster–Graham, supra,* our supreme court construed the predeces-

sor to the statute now in question. *See* Colo. Sess. Laws 1969, ch. 221, § 87–1–28 at 697.

In that case, the court adopted the "virtually universal rule" that an indemnity claim is separate and distinct from the underlying claim, and that "an indemnity claim does not begin to run until the indemnitee's liability is fixed—*i.e.,* when he pays the underlying claim or a judgment on it." The rationale for this rule is that an indemnity action is considered separate and distinct from the injured party's claim. *See* Annot., 57 A.L.R.3d 867 (1974).

The statute involved in *Duncan v. Schuster–Graham, supra,* did not expressly apply to actions for indemnity or contribution, nor did it define when such actions accrue. However, following that decision, the General Assembly adopted comprehensive amendments to the statute that had been construed in *Duncan v. Schuster–Graham, supra.* Those amendments include the following pertinent additions:

> "(b) *A claim for relief arises* under this section *at the time the damaged party discovers* or in the exercise of reasonable diligence should have discovered the defect ... *which ultimately caused the injury....* .
>
> "(c) *Such actions shall include* any and all *actions in* tort, contract, *indemnity or contribution* or other actions for the recovery of damages *for:*
>
>> (I) *any deficiency in the design, planning ... [or] construction ...* of any improvement to real property; or
>>
>> (II) *injury to real or personal property caused by any such deficiency....*"

Colo. Sess. Laws 1979, ch. 144, § 13–80–127 at 631 (emphasis added).

In determining the meaning of legislation, words and phrases are to be accorded their familiar and generally accepted meaning. Section 2–4–101, C.R.S. (1980 Repl. Vol. 1B); *Humana Inc. v. Board of Adjustment,* 189 Colo. 79, 537 P.2d 741 (1975). A statute is to be construed as a whole to give a consistent, harmonious, and sensible effect to all of its parts, and to further the legislative intent evidenced by the statu-

tory scheme. Section 2–4–203, C.R.S. (1980 Repl.Vol. 1B); *Martinez v. Continental Enterprises,* 730 P.2d 308 (Colo.1986).

■ Legislative intent to change the meaning of a statute by amendatory language will not be inferred unless such intention is clearly manifested. *Associated Grocers of Colorado, Inc. v. Bendickson,* 36 Colo.App. 239, 538 P.2d 476 (1975). However, when amendments follow closely upon a judicial decision interpreting a statute, and the plain meaning of the amendatory language manifests a modification of the statute as previously construed, we must assume that the general assembly intended to change the law. Such an assumption is warranted by the amendatory language involved here.

■ Here, the amendatory language used indicates that the general assembly intended to abrogate the general rule adopted in *Duncan v. Schuster–Graham, supra.* The amendment clarifies that the two-year statute of limitations also applies to indemnity actions. It further provides that a claim for relief arises for purposes of the two-year limitation period at the time the damaged party discovers, or reasonably should have discovered, the defect in the improvement which caused the injury. The statute does not differentiate between the time an action accrues for the underlying claim and a claim for indemnification. Rather, the statute begins to run at the same time for all claims of injury caused by defects in design and construction of improvements to real property, including claims based upon theories of indemnity and contribution.

Thus, we conclude that the general assembly intended to abolish the *Duncan v. Schuster–Graham* distinction between the time of accrual for underlying claims involving construction defects, and claims for indemnification arising therefrom. And, we further conclude that the statute requires that an indemnity claim must be brought within the same period of time as is required for the underlying claims. *See Frederickson v. Alton M. Johnson Co.,* 402 N.W.2d 794 (Minn.1987).

We recognize that the two-year statute of limitations may bar an indemnitee's cause of action even before the indemnitee's liability for compensation is finally determined and before the indemnitee makes any payment for the loss. However, C.R.C.P. 14 permits a defendant to join potential indemnitors as third-party defendants in such actions. Further, since the original claimants named Garney and NHPQ as party defendants in the original proceeding, C.R.C.P. 13 would have permitted defendant to make a timely cross-claim for indemnification in that action.

We presume that the general assembly was cognizant of the applicable rules of practice and procedure and that it recognized the adequacy of those rules to provide due process for potential indemnitees. Hence, we conclude that the trial court did not err in determining that NHPQ's claim against Garney accrued no later than January 16, 1985. Indeed, under our interpretation of the statute, the claim accrued no later than November 1980, when the injured parties sued both NHPQ and Garney. Hence, the action was properly dismissed as barred by the statute of limitations.

## II.

After dismissing NHPQ's action, the district court granted Garney's request for an award of attorney fees pursuant to § 13–17–102, C.R.S. (1987 Repl.Vol. 6A), without making any findings of fact or conclusions of law as to the basis of its award. The court erred in so doing. *See Board of County Commissioners v. Auslaender,* 745 P.2d 999 (Colo.1987).

As the statute in question has not previously been construed by an appellate court, and because the amendment to the statute modified previously controlling case law as to the time of accrual for actions for indemnification, we conclude that neither NHPQ's action not this appeal was frivolous, groundless, or vexatious. Thus, we determine that the trial court's award of attorney fees was improper, and we decline to award attorney fees on appeal.

The judgment dismissing plaintiff's claim is affirmed. The award of attorney fees is reversed, and the cause is remanded to the district court for vacation of the award of attorney fees.

METZGER and CRISWELL, JJ., concur.